SIELA v. THE HANNIBAL & ST. JOSEPH RAILROAD COMPANY, *Appellant.*

1. **Master and Servant**; MACHINERY: NEGLIGENCE. An employer should furnish to his servants good, safe and properly constructed machinery and implements for carrying on his business. By this, however, it is not meant that he is an insurer of their safety and under an absolute obligation to provide safe machinery and implements, but only that he is to use reasonable care and precaution in procuring them and in keeping them in good order.

2. **The** doctrine applied to a case where the defendant furnished its servant with a defective hand car, and a series of instructions approved.

*Appeal from Buchanan Circuit Court.*—HON. W. H. SHERMAN, Judge.

AFFIRMED.

*George W. Easley* for appellant.

The demurrer to plaintiff's evidence should have been sustained. The master is not chargeable for defects in machinery causing injury to the servant, unless negligence or fault can be imputed to the master. Wood on Master and Servant, §§ 344, 382; Roberts & Wallace's Liability of Employers, (2 Ed.) 113, 169; *Scott v. London Dock Co.*, 34 L. J. Ex. 220; *Schultz v. Railroad Co.*, 64 Mo. 32. The first and second instructions given for plaintiff submit issues not embraced in the pleadings, and upon which no evidence was offered. *Waldhier v. Railroad Co.*, 71 Mo. 514; *Price v. Railroad Co.*, 72 Mo. 414; *Edens v. Railroad Co.*, 72 Mo. 212; *Bullene v. Smith*, 73 Mo. 151; *Ely v. Railroad Co.* 77 Mo. 34. In all the instructions given by the court, both for plaintiff and of its own motion, the question, what constitutes negligence and care, was left, both law and fact, to the jury, which was error. *Goodwin v. Railroad Co.*, 75 Mo. 75; *Yarnell v. Railroad Co.*, 75 Mo. 583; *Zimmerman v. Railroad Co.*, 71 Mo. 491. The opinions of plaintiff's

witnesses that the handle was made of improper wood, "would have no appreciable weight in the scale of evidence" if the witness Groff applied the tests he testified he did. *Warner v. Railroad Co.*, 39 N. Y. 468; 1 Redfield R'y Cases, 403 ; Pierce on R. R., p. 371; *Hough v. Railroad Co.*, 100 U. S. 218.

*James W. Boyd* for respondent.

The demurrer to the evidence was properly overruled. If the handle was defective at the time of its construction, and so continued when put to use, it was not necessary to show further notice or knowledge on part of defendant. *Greenleaf v. Railroad Co.*, 29 Ia. 14. It was the duty of defendant to furnish suitable machinery. *Long v. Railroad Co.*, 65 Mo. 224 ; *Lewis v. Railroad Co.*, 59 Mo. 495 ; *Porter v. Railroad Co.*, 71 Mo. 66; *Gibson v. Railroad Co.*, 46 Mo. 163. The instructions do not involve any questions not embraced in the issues. Appellant's motion for a new trial does not refer to the instructions given by the court, on its own motion; hence the fourth specification in appellant's assignment of errors is not relevant. " The conclusion reached by the jury is manifestly right, and a different result could not have been reached by them, without manifest injustice, therefore, the verdict ought not to be disturbed." *Noble v. Blount,* 77 Mo. 235 ; see p. 239 ; *Blewett v. Railroad Co.,* 72 Mo. 583. On the entire case, it is apparent, that the rulings of the trial court were very favorable to appellant, and that appellant has no reason to complain of the result.

NORTON, J.—This action was commenced in the circuit court of Buchanan county to recover damages for personal injuries received by plaintiff in consequence of being thrown from, and run over by a hand car, by reason of the breaking of a handle thereof on which plaintiff was working as the servant of defendant.

The petition alleges among other things, the following as the cause of action:

"That prior to the time plaintiff was injured, the defendant carelessly and negligently furnished to plaintiff for his use in and about said work upon defendant's track, a hand car which was unsafe and dangerous and unfit for use; that said unsafe and dangerous condition of said hand car were known to defendant prior to the time when it was furnished to plaintiff, and until plaintiff was injured     *     *     but were never known to plaintiff until he was injured     *     *      that on, etc., plaintiff was, etc., when the lever and handle of said car, in consequence of said negligent and careless construction, and unsafe and dangerous condition, broke, and by breaking threw plaintiff," etc.   The answer of defendant was a general denial.

Plaintiff on the trial obtained judgment for $1,500, from which the defendant has appealed, and the first error assigned and relied upon is the action of the court in refusing to give an instruction, at the close of plaintiff's evidence, that he was not entitled to recover.   Plaintiff introduced as a witness the section foreman, who on the day of the accident, with four hands, the plaintiff being one of them, were operating a hand car on defendant's road.   He testified that:   "We were going west over the railroad of defendant on a hand car; we had no load on the hand car; while so employed the handle of the car broke, and plaintiff was thrown off and run over by the car;     *     * the handle broke square off; the handle is made of what I call brash oak, that is brittle wood; I had been using the car about two weeks; it came to me about two weeks before the accident from the car shops at Hannibal; the car had been repaired at the shop;     *     *      the handle which broke was in the car when it came to me, and was new; the plaintiff is near-sighted."   On his cross-examination he said all the men stood with their faces in the direction we were going except the plaintiff; he stood in front of the outside of the handle, and with his back in the

direction we were going; the handle broke while he was pulling on it, and his back being in the direction we were going, he of course fell off the car; the car handle is much more likely to break when pulling up than when pushing down; the strain on it is much greater. I don't think there is any proper place for a man on a hand car. I left that to him; if he had been inside the handle and looking in the direction we were going he would not have been thrown off the car; the handle seemed when it came to me 'to have been painted.' Dr. Simmons testified as to the nature of the injury.

Kessler, another witness, testified: I was on the hand car at the time of the accident; we were going west and the plaintiff was working one side of the forward handle of the hand car. The handle broke square off the side plaintiff was working, and he fell backward on the track and the car passed over him. I think he was pulling on the handle when it broke; the handle is much more liable to break when the workman is pulling than when he is pushing it; the plaintiff stood outside, and in front of the handle of the car. Standing outside, or in front of the handle is a more dangerous position than standing inside    *    * The way the handle broke he would not have fell off if he had been standing as we were; if it had been broken when he was pressing down on the handle, and he had been standing with his face the way we were going, he would then have fallen on the track, and the other position he did occupy would have been safer.

Patrick Brady was introduced and testified as follows: " I have been railroading as section hand and section foreman for eighteen years; a great part of the time I was in defendant's employ as section foreman; I am not now; I have known the plaintiff for about twenty years; he worked for me on the defendant's railroad when I was section foreman for about two years, off and on; the first place a man gets on a hand car is the proper place to work in running it; I have never known or made any difference in regard to

places where a man should stand in running a hand car."

On cross-examination this witness said: "When a man is standing on a car, as Siela was, if the handle breaks when he is pushing down he is safe; if it breaks while he is pulling up he will fall off in front of the car; I think a handle is as likely to break pulling up as pushing down, and pushing down as pulling up; when pushing down he puts his whole weight on the handle, and the position plaintiff occupied when the accident happened was safer than that occupied by the other men on the car, if the handle had broken when being pushed down; I did not see the accident."

Plaintiff, after stating in his evidence that he had not been able to work since the accident, and that he was sound and well before, said: "I always, when on the hand car occupied the position I did the morning I was hurt; I took it from choice; I am very near-sighted, and did not observe any defect in the handle, or that it was made of brash wood before I was hurt; I thought it was a good handle, and could not see any defect in it; I could not tell whether it was light or heavy wood as it was fastened in the lever."

Mr. Arnold, introduced on part of plaintiff, testified as follows: "I am a carpenter by trade and familiar with wood of different kinds (the broken car handle being identified was here shown to the witness who then said): This is a brittle piece of wood and not fit for the uses to which it was put; I can tell from the color of the wood, its grain and weight, that it is brittle."

Mr. Frick, introduced on part of plaintiff, testified as follows: "I work in wood and am familiar with all kinds; made car handles for several years; this handle (the broken handle here shown witness) is made from wood of an old tree; it is not fit for car handles or any severe work; when such wood breaks it breaks square off; when made from a younger tree it splits; the handle was very brittle

and was made out of very inferior timber; hand car handles should be made of the best kind of timber.

This was all the evidence offered by plaintiff and we think it made out a *prima facie* case for plaintiff under his petition, and that defendant's demurrer to the evidence was properly overruled. There can be no question but that it was the "duty of defendant to furnish for its servants good, safe and properly constructed machinery and implements for carrying on its business     *     *  .  By this, however, it is not meant that he is an insurer of their safety, and under an absolute obligation to provide safe machinery and implements, but only that he is to use reasonable care and precaution in procuring them, and in keeping them in good order and condition." *Porter v. Han. & St. Joe R. R. Co.*, 71 Mo. 67; *Long v. Pacific R. R. Co.*, 65 Mo. 225; *Lewis v. St. L. & I. M. R. R.*, 59 Mo. 495.

The evidence tended to show that the handle was made of brash, brittle wood and unfit to be put to such use, as shown by its color, weight and grain; it also tended to show that in consequence of the defendant's near-sightedness, the painting of the handle and its attachment to the hand car, the defective character of the wood or handle could not be discovered by him till after it broke. The defective quality of the wood in the hands of defendant's workmen who made and put it in the car, was quite as discoverable to them as it was to those who saw it after the accident. If, at the time the handle broke, it was brash, brittle wood and unsuited for car handles, the conclusion necessarily follows that such was the character of the wood, when it was put in the car but two weeks before at defendant's shops, and that ordinary skill and observation on the part of defendant's servants, who made and put it in, would have informed them of that fact.

After the demurrer to the evidence was overruled defendant offered evidence tending to prove that the proper place for the plaintiff to have occupied on the car was be-

tween the handles with his face in the direction the car was going, and had the plaintiff occupied such position he would not have been injured by the breaking of the handle.

Mr. Groff, introduced on behalf of defendant, testified as follows: "I live at Hannibal in this State; I am a workman in the car shops of defendant at that place; I build and repair all of defendant's hand cars; after completing a hand car and after repairing one I test it thoroughly before sending it on the road for use; I do this under orders; the test consists in putting the car on a railroad track near the shop, load it with from one to two tons of railroad iron and running it up and down the track with such load; I never fail to do this with all care, and am satisfied I tested this one in that manner; I have been in defendant's employ in my present capacity for seventeen years."

On cross-examination this witness said:

"I make the handles out of oak and sometimes of ash and sometimes I use blackjack; each handle is tested by me before being put in the car; the test consists in putting it in a vice and pulling and pressing on it; when satisfied that the wood is good and sound it is thrown in a pile with others for use; I test sometimes a dozen handles in twenty or thirty minutes; the handles are intended to be made of best material; there are four or five railroads coming into Hannibal and none of them use iron handles on their hand cars."

This was all the evidence and we have inserted it in order to an intelligent disposition of the objections of counsel to the action of the court in giving and refusing instructions.

The instructions given on behalf of plaintiff are as follows: The court, on motion of plaintiff, instructs the jury that if they believe from the evidence that on or about July 21, 1881, plaintiff was in the employment of the defendant, and that while in the discharge of his duties as such employe, he was, without carelessness or negligence on his

part which contributed directly thereto, thrown from defendant's hand car and injured by reason of the breaking of the handle or lever of said hand car; that said handle or lever of said hand car was at said time defective and unsafe; that the defective or unsafe condition of said handle or lever was unknown to plaintiff, and could not have been known by ordinary care or caution on his part, but was known to defendant, or might have been known by defendant by the exercise of reasonable caution and diligence on the part of defendant, then the jury will find for the plaintiff.

If the jury believe from the evidence that the hand car mentioned in the petition was, at the time it is alleged that plaintiff was injured, in a defective or unsafe condition, and that the agents or servants of defendant whose duty it is to inspect or repair its hand cars knew, or by the exercise of reasonable care and diligence might have known, such condition of said hand car, then such knowledge is the knowledge of defendant and the neglect or failure to obtain such knowledge is the negligence or failure of defendant. That it was the duty of defendant in constructing and repairing its hand cars for the use of its employes to exercise care and skill in repairing and in selecting the materials with which to repair said hand cars.

If the jury find for plaintiff they will assess his damages at such sum as will compensate him for the injuries he has sustained, taking into consideration the pain and anguish, mental and physical, he has endured, not to exceed $5,000.

It was not incumbent upon plaintiff while in defendant's employ to search for latent or hidden defects in the implements furnished to him by defendant, unless by ordinary care and caution the defect could have been discovered to plaintiff, he had a right to assume that the hand car furnished for his use by defendant was safe and sufficient for the purpose of his employment

Defendant asked the following:

1. The jury are instructed that under the pleadings and evidence in this case the plaintiff cannot recover.

2. If the jury believe from the evidence that the proper or safe place for a man on a hand car who is working at the handle of the car as plaintiff was, is between the handles, or that such position is less dangerous than the one occupied by the plaintiff at the time he was injured, then the plaintiff cannot recover, and the jury must find for defendant, although they may believe that the handle in proof was defective or made of poor and defective material.

3. If the jury believe from the evidence that plaintiff's injuries were caused by a negligent or dangerous position occupied by him on the car, or that he would not have been so injured if he had occupied a position between the handles of the car, and further believe that the position occupied by him was voluntarily assumed and was more dangerous than a position between the handles, they must find for defendant, although they may believe that the car handle in proof was defective or made of poor and defective material.

5. The jury are instructed that while the defendant must use care and diligence to supply his employes with good and safe machinery and appliances, it does not warrant the soundness of such machinery or appliances, and if the jury believe from the evidence that due care was used by defendant's employes in the selection, construction and testing of the car handle in proof a short time before the same was furnished for use, and that the defective quality in the wood of the car handle was not discoverable by such recent careful inspection and test, they must find for defendant.

6. If the jury believe from the evidence that the car handle in proof was of new material and was put in the car only two weeks before the injury sued for, that it was inspected by the proper employes of defendant before it was used, and that after it was put in the car and before the

car was placed on the railroad for use, the strength of the handle was thoroughly tested by such employes and that such tests showed no defect in the handle, they must find for the defendant.

The court gave the instructions numbered 3 and 5, as prayed, but refused to give the instructions numbered 1, 2 and 6, to which order and ruling of the court defendant excepted at the time.

The court on its own motion gave the following instructions to the jury :

The court instructs the jury that as a matter of law the defendant is not bound to provide its employes with machinery absolutely safe. The law imposes upon defendant as an employer only the obligation to use reasonable and ordinary care, skill and diligence in procuring and furnishing suitable and safe machinery.

When plaintiff entered into the service of defendant, he thereby undertook to use all the ordinary risks incident to his employment including his own negligence. It was plaintiff's duty as a servant of defendant to use all reasonable care and diligence to see that the machinery daily used by him in the performance of his duty was in fit condition for use, and report the defects which were apparent, if any, to the company, and if he did not do so it was negligence on his part.

Although the hand car furnished by the defendant for the use of plaintiff and his section gang was unsafe, yet if the plaintiff knew the character and weakness of the lever of the hand car, or might by ordinary care have known it, and yet continued to use it and work with it, he was bound to exercise care and caution reasonably connected with the danger to be feared, and if he failed to do so and in consequence thereof received the injury complained of, he cannot recover from defendant on account of such injury.

It is insisted by counsel that the first instruction given for plaintiff is erroneous in that it submits an issue not

presented by the petition and authorized a recovery for a defect arising after the car left the shop at Hannibal. We do not think the instruction is such a departure from the cause of action stated in the petition, as is referred to in the class of cases of which the case of *Waldhier v. H. & St. J. R. R. Co.*, 71 Mo. 514, is a representative. It is alleged in the petition that defendant furnished for the use of plaintiff " a hand car which was negligently and carelessly constructed, and which was unfit for use; that said dangerous condition, and negligent construction were known to defendant prior to the time it was furnished and unknown to plaintiff." The instruction tells the jury that in order to find for plaintiff, they must believe that the car handle was defective and unsafe, that this was unknown to plaintiff, and could not have been known by ordinary care and caution, but was known or might have been known to defendant by ordinary care. The instruction when read in connection with the fifth given for defendant, and the first one given by the court of its own motion, is unexceptionable, and what is said of this instruction applies to the second of plaintiff's instructions.

There was no error in refusing defendant's first instruction for the reason heretofore given, nor was error committed in refusing the second instruction, inasmuch as the third instruction which was given covered the same ground. No point has been made on the refusal of the court to give the fourth instruction, which for that reason is not incorporated herein. The sixth instruction might well have been refused on the ground that the principle which it announced was sufficiently and clearly embraced in the fifth instruction; and on the further ground that it ignored the fact established by the evidence of Mr. Arnold that the wood of which the handle was made was unfit for the use to which it was put, and that this fact was discoverable from its weight, its color, and its grain.

The instructions, taken together, presented the law of the case fairly to the jury, and we perceive nothing in the

record justifying an interference with the judgment, and it is hereby affirmed with the concurrence of the other judges.