JOHN MOORE, Respondent, v. ST. LOUIS WIRE MILL COMPANY, Appellant.

St. Louis Court of Appeals, December 19, 1893.

1. **Master and Servant**: ACCEPTANCE OF RISKS BY LATTER. A servant assumes all risks arising from defective appliances of which he knew, or which were so obvious as not to escape the observation of an ordinarily prudent person.

2. ——: ——: LAW AND FACT. Whether the risk is thus obvious is a question of fact, when different conclusions in regard thereto can reasonably be drawn from the evidence.

3. ——: ——: INSTRUCTIONS. An instruction authorizing a recovery by a servant against his master for injury from a defect in the appliances furnished by the latter, is fatally erroneous, if it does not require a finding that the defect was the cause of the injury.

*Appeal from the St. Louis City Circuit Court.*—HON. JACOB KLEIN, Judge.

REVERSED AND REMANDED.

*P. Taylor Bryan* for appellant.

(1) The instruction given by the court at plaintiff's request, which attempts to define the risks

assumed by the plaintiff, is erroneous. It excludes from the risk of employment all risks which arise from the defects of appliances or places in which plaintiff was required to work, even though they were patent defects, and such as were known, or might, by the exercise of ordinary care, have been known to plaintiff. This is erroneous. Cooley on Torts [2 Ed.], 651, and cases cited; *Flynn v. The Union Bridge Co.*, 42 Mo. App. 529; dissenting opinion of ROMBAUER, P. J., in *Fugler v. Bothe*, 43 Mo. App. 44–69, adopted as the opinion of the supreme court; *Fugler v. Bothe*, 22 S. W. Rep. 1113; *Watson v. Coal Co.*, 52 Mo. App. 366; *Aldridge v. Furnace Co.*, 78 Mo. 539; *Hulett v. Railroad*, 67 Mo. 239; Wood on Master & Servant [2 Ed.], sec. 351, p. 724; *Sullivan v. India Mfg. Co.*, 113 Mass. 398. (2) The last instruction given for plaintiff is erroneous, in that it does not require the jury to find that the alleged absence of the guard or ledge, referred to in the instruction, was the cause of the injury to the plaintiff. *Flynn v. Union Bridge Co.*, 42 Mo. App. 529; *Breen v. Cooperage Co.*, 50 Mo. App. 203; *Spiva v. Osage, etc. Co.*, 88 Mo. 68; *Stone v. Hunt*, 94 Mo. 475.

*John J. O'Connor* for respondent.

Plaintiff's last instruction should be read in conjunction with all the other instructions given in the case, and when so read there is no substantial error. When instructions, read together, are not misleading and declare the law sufficiently favorably for the appellant he cannot complain. *Ridenhour v. Railroad*, 102 Mo. 270; *Haniford v. City of Kansas*, 103 Mo. 172; *Bergman v. Railroad*, 104 Mo. 77.

BIGGS, J.—This action for personal injuries originated before a justice of the peace. The plaintiff

alleged in his petition that he was employed as a laborer in the defendant's mill, and that, while he was engaged in the work assigned to him, he fell into a vat of hot lime; that the accident occurred by reason of the negligence of defendant in failing to provide plaintiff with a reasonably safe platform on which to work, and in negligently leaving the vat open or unguarded close to where plaintiff was required to work. On a trial in the circuit court there was a judgment for $250, from which judgment the defendant has appealed.

The circuit court refused to nonsuit the plaintiff. This is assigned for error.

The plaintiff's case rests wholly on his own testimony. He testified, in substance, that he received his injuries on the second day after his employment inside of the mill; that he was engaged in carting loads of wire from the place where hot lime was poured over the wire to what were called the drying rooms; that the trucks which were loaded with wire were placed on a gangway or bridge constructed between two vats, which were constantly filled with boiling lime; that the vats were several feet long and one foot wide, and that the gangway was six or seven feet wide with a track in the center, running lengthwise, upon which the loaded trucks ran; that along the sides of this gangway next to the vats there were wooden guards two or three inches high, which were reasonably sufficient to keep persons from slipping into the vats; that there had previously been a similar guard on the end of the vat into which he (plaintiff) fell, but that a portion of it had been broken off; that it had the appearance of an old break, for the reason that lime and dirt had accumulated at the place where the guard had been broken; that he had no knowledge of the defective condition of the guard until after he received his injuries; that in

moving a truck load of wire it became necessary, when he reached the end of the vat, for him to go to the side of the truck to keep the load from upsetting; that he placed his shoulder against the load, and in bracing himself his foothold gave way, and that by reason of the break in the guard his foot slipped into the vat of boiling lime.

It is undoubtedly the law that the master must furnish suitable and reasonably safe appliances for the accomplishment of the work assigned to the servant. (*Siela v. Railroad*, 82 Mo. 430; *Covey v. Railroad*, 86 Mo. 635; *Hickman v. Railroad*, 22 Mo. App. 345.) And it is also the law that the master must make the place where the servant is required to work reasonably safe. (*Reichla v. Gruensfelder*, 52 Mo. App. 43; *Dayharsh v. Railroad*, 103 Mo. 570; *Indermaur v. Dames*, L. R. 1 C. P. 274.) But the servant may dispense with these obligations which the law imposes on the master. As was said by the supreme court of Massachusetts: "When he (the servant) assents, therefore, to occupy the place prepared for him, and incur the dangers to which he will be exposed thereby, having sufficient intelligence and knowledge to enable him to comprehend them, it is not a question whether such place might, with reasonable care, and by a reasonable expense, have been made safe. His assent has dispensed with the performance on the part of the master of the duty to make it so. Having consented to serve in the way and manner in which the business was being conducted, he has no proper ground of complaint, even if reasonable precautions have been neglected." *Sullivan v. India Mfg. Co.*, 113 Mass. 396.

So the courts decline to hold the master liable, when the defects in machinery are perfectly obvious to anyone, and the servant has had the time and opportunity to consider and appreciate the extent of the risk.

*Keegan v. Kavanaugh,* 62 Mo. 230; *Cummings v. Collins,* 61 Mo. 520; *McDermott v. Railroad,* 87 Mo. 287; *Reichla v. Gruensfelder, supra.*

The doctrine of the foregoing cases rests on the legal presumption that the servant is at liberty to engage in the work or not, as he sees proper; and, having voluntarily elected to enter the employment, he will be presumed to have contracted in reference to obvious conditions. This presumption, as a practical and every day question, is a mere fiction, for the reason that a great majority of laborers have no choice in the matter. Courts, however, ought to act on the legal presumption; for to ignore it would produce confusion and uncertainty in the administration of the law.

In the case of *Fugler v. Bothe,* 43 Mo. App. 44, a majority of this court erroneously supposed that the supreme court had broken away from this rule, and had imported into the jurisprudence of this state the law of many other jurisdictions, to the effect that the servant will not be considered as having assumed the increased risk arising from obvious defects in machinery or appliance, unless the danger be immediate or threatening. Judge ROMBAUER held to a contrary view, and so expressed himself in a dissenting opinion. The case was certified to the supreme court, and the views of the dissenting judge were adopted by that court. We are, therefore, justified in the belief that we will hear nothing more of the *"immediate and threatening danger doctrine."*

Making application of the law to the facts as testified to by the plaintiff, we are not prepared to say that the inference is not a fair one, that the plaintiff did not see the defect in the guard. The plaintiff said that only a small portion of the guard was broken off, and that at that particular place lime and dirt had accumulated to a considerable extent, thus laying the

foundation for the further inference, necessary to the plaintiff's recovery, that the break was not of recent date, and that the defendant knew, or ought to have known, of it. It must be borne in mind that the guard extended only two or three inches above the surface of the floor, making it possible for the break in the guard to be concealed by lime or dirt. Whether, under the physical facts as established by the plaintiff's evidence, the alleged break in the guard would likely escape the attention of an ordinarily observant person, is a question about which reasonable minds might differ. Therefore, the question was one of fact for the jury, and not of law for the court. This assignment will be overruled.

The defendant complains of the plaintiff's second instruction, which reads: "The court instructs the jury that, while the plaintiff is bound to accept the risks incident to the doing of his work when the appliances and instruments furnished to him with which to do said work are reasonably safe, and such as are usually used under similar circumstances for the doing of such work, this does not mean that he is bound to accept *risks or damages (dangers) which spring from any defects in the appliances or instruments with which he was required by defendant to do said work.* And the jury are further instructed that for the purpose of this action they shall consider the floor, as well as the rail or guard about the top of the vat mentioned in evidence, and into which plaintiff slipped, as part of the appliances furnished by defendant to plaintiff with which to do his work at the time he fell and slipped into said vat, if they find that he did so fall and slip."

As we have attempted to show, the servant assumes all risks arising from defective appliances of which he knew, or which were so obvious as not to escape the

observation of an ordinarily prudent person. It is evident that the instruction was drawn upon an entirely different theory. That it was prejudicial cannot be questioned.

Plaintiff's third instruction is likewise faulty  The jury was not required by it to find that the plaintiff did not know of the defect in the guard, or that an ordinarily observant man would not have discovered it. Nor was the jury required to find that the *defect was the cause of the accident,* which, in itself, rendered the instruction fatally defective, as it was one which covered the entire case. *Flynn v. Bridge Co.*, 42 Mo. App. 536.

For errors in the instructions, the judgment will be reversed and the cause remanded. All the judges concur.