A. A. MATTINGLY, RESPONDENT, v. FRANK A. BRODERICK, APPELLANT.
—36 S. W. (2d) 415.

In the Springfield Court of Appeals. Opinion filed February 23, 1931.

*Orville Zimmerman* and *Lee Winchester* for appellant.

*Langdon R. Jones* for respondent.

COX, P. J.—Action for damages for personal injury caused by plaintiff falling off a railroad car and striking his foot on a railroad cross tie lying loose on the ground where he fell. Upon a trial before a jury plaintiff recovered and defendant has appealed.

The plaintiff recovered upon the theory that defendant was responsible for the loose tie being left on the ground where it was and that defendant was negligent in permitting the tie to remain there after he knew or by the use of ordinary care could have known of its being there.

Defendant makes the point that the court was without jurisdiction to try this cause by reason of lack of proper service of summons upon defendant but in the view we take of this case, it will not be necessary to pass upon that question.

The question in this case upon its merits is whether or not plaintiff on the evidence was entitled to go to the jury. This will necessitate a review of the essential facts most favorable to plaintiff, and conceded facts, for it is well settled that in passing upon a demurrer to the evidence the plaintiff must be given the benefit of all the evidence favorable to him. This may be affected by conceded facts that are unfavorable to him. The essential facts in this case are substantially as follows: The defendant and others were engaged as partners in doing work of dredging and ditching. They used many very heavy pieces of machinery and other tools and appliances that were lighter. When one job was completed they loaded the machinery, tools and appliances in railroad coal cars and flat cars and shipped to the next point where they were to work. Among the machinery was a large derrick which in unloading cars was used to lift the heavy parts of the machinery off the cars. At the time of plaintiff's injury two cars loaded with

machinery and appliances were placed on a side track near Marked Tree, Arkansas, to be unloaded there. The derrick had been unloaded and placed in position to be used in unloading the heavy machinery from the cars. In placing the derrick, railroad cross ties were used to crib up the derrick. Cross ties for that purpose were shipped with the machinery and unloaded and carried from one place to another as needed. On this occasion the cross ties were carried by employees of defendant and his associates in business and put in place for use. They did not have enough of these ties and others were secured from the switch stand and from under the spur track. When no longer needed these ties were carried by employees of defendant and his associates and some of them replaced under the switch track from whence they had been taken and the others were carried across the track and left for future use. One witness said, "We tore the ties down and carried part of them south of the track across the track from where they were. I think this work was completed late in the evening the day before Mattingly was hurt. Mr. Broderick told us to tear the ties down and place them across the track for cribbing and we commenced to get the ties. Mattingly was not in this party and did not assist in this work. He was hurt late the next evening about four o'clock. . . . Just before I started to unload this car I had helped push it down. Mr. Broderick said when and where to stop the car. When the car stopped I went on top with Broderick and Mattingly. . . . Broderick directed Mattingly and me to throw off the car some empty oil drums. Mattingly was removing one of these when I saw him fall. The position he took was necessary in order to carry out the order of Mr. Broderick."

Plaintiff described the car from which he fell as a steel coal car with a sort of flange on the top of the sides of the car. He and Mr. Muse and defendant were on top of the car and defendant directed them to throw off the loose pieces and some barrels. Defendant was close to plaintiff as he worked. Plaintiff in describing his fall said, "I did throw off one or two barrels and came to this next barrel and I could not pull it loose from the machinery with my hands and I put my foot against it, and shoved it partly loose and reached hold of the barrel and tried to push it up and it came loose, as well as I know, and I started to fall backwards off the car and I grabbed the car some way and managed to light upon my feet." He had one foot on top of the flange at the top of the side of the car and it was that foot which slipped and caused him to fall. He fell to the ground and his right foot struck the soft earth and was not hurt, but the left foot struck on a loose cross tie lying on the ground near the track and his left ankle and leg were broken in three or four places. The place where

he was working on the car was slick from an accumulation of gear grease and his feet were made slippery in walking over the greasy machinery as he was required to do. Defendant testified that some parts of the machinery projected above the top of the car and the barrels came up about even with the top. Plaintiff and Mr. Muse were directed by defendant to throw barrels off the car but were not directed as to the position they should assume while doing it or the manner in which the work should be done. They were merely told to throw the barrels off the car and were left free to choose their own way of doing it. Plaintiff had been engaged in the same class of work for two years and knew how the work must be done and it is conceded that there was no negligence in loading the car or assigning plaintiff to the work of throwing barrels off of it. His walking over the greasy materials on the car was a necessary part of the work. Plaintiff had assisted in unloading another car on the same track just before he began work helping to unload this one. He had helped load this same machinery at Gary, Indiana, and helped unload it at Kennett, Missouri, and helped load it again at Kennett from whence it was shipped to Marked Tree, Arkansas, where he was hurt in helping to unload the machinery at that point. There is no direct evidence to show who had placed the loose tie where it was at the time plaintiff fell upon it but we think the circumstances in proof are sufficient to sustain a finding that some of defendant's servants left it there at the time the ties were being moved as above related. There is no evidence that defendant knew before the accident that the tie had been left there and he testified that he did not know it was there but in passing upon a demurrer we cannot consider the testimony of defendant unless it strengthens plaintiff's case.

If defendant's servants left the tie at the place where it was when plaintiff fell he would be responsible for its being there even though he did not know that it had been left there by his servants. The act of the servants in that case would be the act of defendant. [Musick v. Dold Packing Co., 58 Mo. App. 322, 333.]

Counsel for appellant and respondent do not agree as to what was the proximate cause of plaintiff's injury. Appellant insists the proximate cause of plaintiff's injury was his slipping on the greasy surface of the flange of the car on which he had placed his foot while attempting to throw off the barrels. That the slip caused the fall and was therefore the proximate cause of the injury resulting from the fall. Respondent contends that the fall would not have caused the injury if the tie which his foot struck when he alighted had not been there and hence the proximate cause of the injury was the presence of the tie at the place where plaintiff fell. Appellant cites us to ten authorities to sustain his

position and respondent cites eighteen authorities to sustain his position. We have examined all of them but of course cannot review all of them here. Proximate cause has been variously defined as applied to the facts in the cases decided but all agree upon the principle that to impose liability the proximate cause of an injury must be some act or omission which in the natural order of things causes, or contributes to cause, the injury and without which the injury would not have been sustained by the injured party. In Cregger v. City of St. Charles, 11 S. W. (2d) 750, cited by both parties in this case, the St. Louis Court of Appeals said, page 753. ''Proximate cause is commonly and best defined as that cause which in a natural and continuous sequence unbroken by any efficient intervening cause produced the result complained of and without which the result would not have occurred'' (citing cases.) It is also true that where a number of things, which, without negligence of the injured party, concur to produce an injury and the party charged is shown to be negligently responsible for any one or more of the concurrent causes of the injury, he will be held responsible the same as if he had been guilty of all the acts contributing to the cause of the injury. [Northern v. Chesapeake & Gulf Fisheries Co., 320 Mo. 1011, 1032, 8 S. W. (2d) 982, 990; Musick v. Packing Co., 58 Mo. App. 322, 333.]

It is clear to us in this case that the greasy condition of the machinery on the car which it was necessary for plaintiff to walk over and which made his shoes slick and likely to slip on the flange of the car, from which he slipped and fell, was what caused plaintiff to fall, and if it had been alleged and proven that the presence of the grease on the machinery was caused by defendant's negligence, he could have been held liable for the injury resulting from the fall that was caused thereby. It is conceded, however, in this case, that the presence of the grease on the machinery was unavoidable and could not be traced to defendant's negligence.

The allegation of negligence on which recovery was based, is, that defendant was responsible for the tie being left where it was and that he should have known that plaintiff was likely to fall by reason of the greasy condition of the machinery and for that reason it became and was his duty to see that all objects which might cause injury in case he should fall from the car to the ground were removed before plaintiff was put to work on top of the car. To our mind there were two things which concurred to produce plaintiff's injury. One was the greasy condition of his shoes which caused him to slip and fall and the other was the presence of the tie which he struck at the end of the fall. That the greasy condition of the machinery and of plaintiff's shoes was un-

avoidable and not chargeable to the negligence of defendant was conceded. This leaves the other question as to whether there was sufficient evidence to take to the jury the question whether the presence of the tie on which plaintiff fell was chargeable to the negligence of defendant. That the presence of the tie was one of the concurrent causes of the injury, we have no doubt. We think there was sufficient evidence to take to the jury the question of defendant being responsible for the presence of the tie at the place where plaintiff fell but was its being placed there a negligent act? That brings us to the crux in this case. No employer is an insurer of the safety of his employees. Proof of an injury is not ordinarily proof of negligence. To convict a party of negligence it must be shown that under the circumstances at the time the party should have had reason to anticipate that injury might result from the act or omission charged against him. If we concede that defendant was responsible for the tie being left where it was, or if it were shown that defendant himself had helped to carry away the ties no longer needed at the derrick and he had dropped this tie where it was, do the facts show that when he left it there near the track on which the car mentioned here was set for unloading, he should have apprehended then and afterward while the car was being unloaded that some one was likely to fall off the car and fall upon it? As already said, we think the evidence sufficient to show that a servant of defendant left the tie at that place and that made defendant responsible for its being there. It is also shown that defendant told those moving the car where to stop it on the track to be unloaded. Defendant knew where the car was stopped and was responsible for it being stopped at that place. If the jury should find that he was responsible for the tie being left where it was, then he would be in the position of being legally chargeable with the car and the tie being in their relative positions when he directed plaintiff and another to go upon the car and throw off the barrels. Should defendant at that time and afterward during the progress of the work have anticipated that some working on top of the car was likely to slip and fall off the car? If so, he should have seen to it that the tie was removed before the parties began work throwing barrels off the car. If he should not have been expected to anticipate danger of some one falling off the car, then he was not required to have the tie moved. Negligence cannot be predicated upon a state of facts that do not show that a reasonable person should have anticipated beforehand that injury of some one else would probably result from those facts. In discussing this question our Supreme Court in Fuchs v. City of St. Louis, 167 Mo. 620, 67 S. W. 610, on page 464, quoted approvingly from Roy on "Negligence of Imposed Duties" pages 133-4 as follows:

"Mischief which could, by no reasonable possibility, have been foreseen and which no reasonable person would have anticipated, cannot be taken into account as a basis upon which to predicate a wrong. A reasonable man does not consult his imagination but can be guided only by a reasonable estimate of probabilities. A reasonable man, to whose ideal behavior we are to look as the standard of duty, will neither neglect what his reason and experience will enable him to forecast as probable nor conduct on a basis of bare chance a business whose success is dependent upon his accuracy in forecasting the future. He will order his precaution by the measure of what appears likely in the usual course of things. The proper inquiry is not whether the accident might have been avoided if the one charged with negligence had anticipated its occurrence but whether taking the circumstances as they then existed, he was negligent in failing to anticipate and provide against the occurrence. The duty imposed does not require the use of every possible precaution to avoid injury to individuals nor of any particular means which it may appear after the accident would have avoided it. The requirement is only to use such reasonable precaution to prevent an accident as would have been adopted by a prudent person prior to the accident. . . ."

And from Webb's Pollock on Torts, to the same effect, in which we find the following:

"The reasonable man . . . will neither neglect what he can forecast as probable nor waste his anxiety on events that are barely possible. He will order his precaution by the measure of what appears likely in the known course of things."

These quotations are followed by quotations from a number of decisions in this and other states sustaining the general rule that unless it be shown that a reasonable man could, before the accident, have anticipated that injury would likely follow from his conduct, he could not be held guilty of negligence. The same principle is enunciated again by the Supreme Court in State ex rel. C. & A. R. R. v. Allen, 291 Mo. 206, 214 and Wecker v. Graffman-McIntosh Ice Cream Co., 31 S. W. (2d) 974, 977.

We do not think the evidence in this case measures up to the requirement necessary to make a case for the jury. Plaintiff had been engaged in the same class of work for two years and had helped unload this same machinery once before and on this occasion had helped unload one other car prior to his work upon this one. There was no evidence that plaintiff or any other person had ever fallen down while unloading machinery for defendant or had fallen off a car. While defendant, as well as plaintiff, knew of the greasy condition of the machinery upon which plaintiff must place

his foot while at work, there is no evidence in this record tending to show that a person would be likely to fall while engaged in unloading the machinery. It cannot be held that defendant should have anticipated that plaintiff was likely to fall unless we should hold that in all cases a person at work upon a slick surface should be expected to fall down while at work. This we are unable to do. To render defendant liable in this case we would not only be required to hold that defendant should have anticipated that plaintiff was likely to fall while at work on top of the car but we should have to go farther and hold that he must have also anticipated that if he did fall, he would fall off the car. There is no evidence in this case that would warrant submitting to the jury the question whether defendant should have anticipated beforehand that plaintiff would likely fall, or if he should fall, he would fall off the car.

We have been cited by respondent to Musick v. Dole Packing Co., 58 Mo. App. 322; Johnson v. Construction Co., 188 Mo. App. 105, 173 S. W. 1081; Holman v. Iron Company, 152 Mo. App. 672, 133 S. W. 379; Stewart v. Laclede Gas & Light Co., 241 S. W. 909; Eaton v. Wallace, 287 S. W. 614; Trout v. Gas Light Co., 151 Mo. App. 207, 132 S. W. 58; Mills v. Steadley Co., 279 S. W. 160; Northern v. Chesapeake & Gulf Fisheries Co., 8 S. W. (2d) 982, as authorities for his contention that in this case a case for the jury was made. We do not think the facts in those cases bear enough similarity to the facts in this case to constitute them authority for holding that this case was properly submitted to the jury. The judgment will be reversed. *Bailey, J.*, concurs; *Smith, J.*, not sitting.